Daniel, J.
 

 If the plaintiff intended to comply with the terms of the sale, but failed in consideration of the defendant’s executing to him the note, then the conspiracy had the effect of depriving the State of so much of the purchase money as made up the difference between the two bids ; and such a transaction, we think, was fraudulent towards the State. The plaintiff’s counsel contends, that, if the parties intended
 
 *22
 
 to defraud the State, it could be taken advantage of by the _State only, and not by the defendant, who has reaped the benefit, and was a
 
 particeps criminis
 
 in the transaction. We are °*'a <^®3rent opinion. The law prohibits every thing which is
 
 contra bonos
 
 mores, and, therefore, no contract, which originates in an act contrary to the true principles of morality, can be made the subject of complaint in the Courts oí Justice. It has been repeatedly decided in England, that the vendor of goods could not recover the price of the vendee, when he had aided the vendee, either in packing or otherwise, to defraud the revenue laws of that country.
 
 Clugas
 
 v
 
 Penabena,
 
 4 T. R. 466.
 
 Waywell
 
 v
 
 Reed, 5
 
 T. R.
 
 599.
 
 So a contract, which is a fraud on a third person, may, on that account, be void as to the parties to it, as where A suceeeded B in a house, and, not being able to pay for the furniture^ proposed to D, his friend, to advance money for him, who accordingly treated with B, and agreed to puchase the furniture for A at £,70, which sum he paid B; but there was a private agreement between A and B, that A
 
 should
 
 pay a further sum of £30, over and above the £70; and, in pursuance thereof, A gave B two promissory notes of £15 each, for that sum:
 
 Held,
 
 that he could not recover on the notes, as the private agreement was a fraud upon D, who had advanced the £70 in confidence that it was the whole consideration.
 
 Jackson v Ducharie,
 
 3 T. R. 551. So where a surety gave a guaranty to A for a certain amount of goods to be sold to B, and the latter agreed to pay 10s. per ton beyond the market price, in liquidation of an old debt due to A, without communicating the bargain to the surety;
 
 held,
 
 that it was a fraud upon the latter, and the guaranty was void,
 
 Pidcock
 
 v
 
 Bishop,
 
 10 Eng. C. L. 197. Lord Mansfield said, (in
 
 Holman
 
 v
 
 Johnston,
 
 Cowp. 343.,) “ the objection that a contract is immoral or illegal, as between plaintiff and defendant, sounded at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is even allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may say so. The principle of public policy is this :
 
 ex dolo malo non ori-
 
 
 *23
 

 ten actio.
 
 No court will lend its aid to a man, who founds his cause of action upon an immoral or illegal act. If, from the plaintiff’s own stating or otherwise, the action appears to arise
 
 ex tenpi causa,
 
 or the transgression of a positive law of the country, then the court says he has no right to be assisted. It is upon this ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.” We are of the opinion that the agreement in this case was in pursuance of a fraudulent design to deprive the State of a fair price for its land, and that the plaintiff ought not to recover. There must be a new trial.
 

 Per Curiam. New trial awarded.