## MARY WHITAKER v. LEWIS T. BOND.

A motion for an injunction made after the coming in of the answer, must be founded upon the equity therein confessed:

*Therefore*, Where the answer to a bill for the specific performance of a contract to sell land, alleged that the defendant was a trustee of the land in question, and as such sold it for Confederate money, at auction, *for cash*, on the 22d of January, 1863; that the complainant became the purchaser, but did not comply with the terms, and did not offer the money until ten or twelve months afterwards, when she tendered it and asked for a deed, which was refused. *Held*, that an injunction to restrain the defendant from prosecuting an action of ejectment for such land, ought not to have been allowed.

*Time*, which in equity generally is not of the essence of a contract, may become so at periods when the currency is rapidly depreciating from day to day.

Where a bidder at auction offered one who also proposed to bid, that if he would desist, she would divide the land with him, *held* to be a fraud upon the vendor, and so, to violate the contract of purchase afterwards made by her as the only bidder.

(*Smith* v. *Greenlee*, 2 Dev. 126, *McDowell* v. *Simms*, Bus. Eq. 130, *Morehead* v. *Hunt*, 1 Dev. Eq. 35, cited and approved.)

MOTION, for an injunction, allowed by *Barnes*, *J.*, at Spring Term 1868 of the Court of Equity for BERTIE.

The complainant had filed the bill at Spring Term 1866, asking for the specific performance of a contract to sell a tract of land described. It alleged that the defendant, as trustee for sale, had exposed the land at auction, for Confederate money, on the 22d of January 1863, that the attendance was considerable, the sale a fair one, and the complainant had purchased at the price of $500. Some time thereafter she tendered the money to the defendant, and demanded a deed, but he refused to give it. She submitted to pay the value of the Confederate money at the time of sale, either in specie or currency, as she might be required.

The answer, filed at the same Term, admitted the sale, and that it was for Confederate money, but alleged that it was expressly for cash; that the complainant bought by the favor of those present, as *widow* of the trustor, and it was so pro-

claimed by persons at the sale; that she agreed previously to the sale, to give two-thirds of the land to one Burch, who was there present to bid, but by such agreement was induced not to do so; that the complainant had made no offer to pay for the land until some eight or ten months afterwards, (currency in the interval having greatly depreciated,) when her offer was declined; that the price is a very inadequate one, the land being worth more than $2,000 in good money; that the credi-tors secured under the trust have notified him not to make a deed, &c., &c.

At Fall Term 1867, upon motion of the complainant, it was ordered that an injunction should issue against the defendant, restraining him from prosecuting a certain action of ejectment, pending in the County Court of Bertie for possession of the land in controversy, until the hearing.

From this order the defendant appealed.

*Smith*, for the appellant.

No counsel, *contra.*

DICK, J. The relief sought by the complainant, is the specific performance of a contract relating to land. The case comes into this Court by appeal from an interlocutory order made in the Court below, granting an injunction against the defendant, restraining him from proceeding in a pending action of ejectment, to recover from the complainant the possession of the land in controversy. The motion for the injunction was made after the coming in of the answer, and, by the rules of equity pleading, it must be founded upon the merits confessed in the answer; Adams, Eq. 359. It has become necessary, therefore, for us to consider, whether the equity confessed is sufficient to continue the injunction to the final hearing.

It appears from the answer, that the defendant, as trustee under a deed in trust, sold the land in question, at public auction, on the 22nd day of January, 1863. The sale was for Confederate money, and the terms were *cash.* The complainant, the widow of the trustor, bid five hundred dollars, and as

no other bid was made, she was declared the purchaser. The *cash* was not paid at the sale, but about ten or twelve months thereafter, she offered to pay the money and take a deed for the land. During this period of delay, Confederate money had depreciated to less than half its value at time of sale.

These are the principal facts set forth in the answer as to this part of the case, and we must consider whether they show an equity, which ought to be specifically enforced. The complainant did not comply with her part of the contract in paying *cash*, which must have been important to the defendant, or he would not have sold for *cash*. Trust sales are usually made on a credit,—cash sales are made to meet sudden emergencies. In equity, time is not generally of the essence of a contract for the payment of money; but in a case like this, where the money was needed for immediate use, and was to be paid in a currency which was rapidly depreciating, the question of time becomes really material. The price bid for the land was not one fourth of its real value, and this delay of the complainant for twelve months, ought to deprive her of the relief she seeks in a Court of Equity. *Perkins* v. *Wright*, 3 Har. & McHen. 324; *Garnett* v. *Macon*, 2 Brock. 185; *McKay* v. *Carrington*, 1 McLean, 50.

This Court cannot estimate the damages of the defendant, so as to afford him adequate compensation, and the fulfilment of the complainant's part of the contract cannot be secured, as Confederate money is now utterly worthless. It is a well-established rule of Courts of Equity to refuse specific performance, when the contract cannot be mutually enforced; Adams, Eq. 82. If the enforcement of this contract was practicable, its specific performance would be unjust and inequitable to the defendant, and the trust creditors whom he represents. The complainant also violated the contract, and it would be a strange equity to give her all the benefit of its enforcement.

It also appears from the answer, that the complainant, at the sale, entered into an agreement with William H. Burch, a creditor largely secured in the deed in trust, that, if he would not bid against her, he might have two-thirds of the land. The

WHITAKER *v.* BOND.

commendable spirit of kindness and sympathy, which is always shown to a widow at the sale of her deceased husband's estate, gave her great advantage as a bidder, and she should have been therewith content, and not have entered into a bargain to stifle bidding, which the law regards as a fraud. In *Smith v. Greenlee,* 2 Dev. 126, Henderson, Judge, says: " A sale at auction is a sale to the best bidder, its object, a fair price, its means, competition—any agreement, therefore, to stifle competition is a fraud upon the principles upon which the sale is founded." It appears from the answer, that the land did not sell for one-fourth of its value, and that Burch, but for his bargain with complainant, intended to make the land bring something like its value. This bargain, therefore, stifled competition, was a fraud upon the vendor, and vitiated the contract. *McDowell* v. *Simms,* Bus. Eq. 130; *Morehead* v. *Hunt,* 1 Dev. Eq. 35. A Court of Equity in the exercise of a sound discretion cannot enforce such a contract. There are other serious objections to a specific performance, set forth in the answer, which we deem it unnecessary to advert to, at this stage of the case. After careful consideration we are satisfied that there is not sufficient equity confessed in the answer, to continue the injunction to the final hearing. It is therefore ordered, that the injunction be dissolved at the costs of the complainant, and that the case be remanded, so that the complainant may proceed as she may be advised.

PER CURIAM.                          Injunction dissolved.