COMMISSIONERS OF GUILFORD COUNTY v. WILLIAM B. MARCH
and others.

## Bond, when illegal—Costs of Prosecution.

1. A bond executed by the prosecutor to pay the costs of a criminal action, the matter being then compromised by entering a *nolle prosequi*, and the accused paying the prosecutor a sum of money, is against public policy and void.

2. The statute in force at the time of this proceeding in reference to taxing a prosecutor with costs does not provide for a case where a *nolle prosequi* is entered.

(*State* v. *Cockerham*, 1 Ired., 381; *Lindsay* v. *Smith* (and cases cited), 78 N. C., 328, cited and approved).

CIVIL ACTION tried upon exceptions to a referee's report, at Spring Term, 1883, of ROWAN Superior Court, before *Graves, J.* The plaintiffs appealed.

*Messrs. J. S. Henderson* and *J. N. Staples*, for plaintiffs.
*Mr. J. M. McCorkle*, for defendants.

SMITH, C. J.   An indictment charging one John W. Thomas with perjury was found at fall term, 1866, by the grand jury of the superior court of Guilford county, on which, by the direction of the presiding judge, the name of the defendant, William B. March, was entered as prosecutor.   At spring term, 1869, a capias was ordered to issue against the accused, when the solicitor should so require, provided the prosecutor should first assume payment of the costs hitherto incurred, and give adequate security to be approved by the clerk for the discharge of such as might thereafter accrue.   This order was made on the application of Thomas, and upon his representation of the insolvent condition of March.   The bond described in the statement of the first cause of action in the complaint was thereupon executed to

the state in the penal sum of $2,000, with condition in avoidance, if the said March should discharge all the costs accrued and to accrue in the event a *nolle prosequi* shall be entered by the state in said case, or in the other event of the acquittal of the said John W. Thomas on the trial.

· In September, 1870, some doubt being entertained as to the sufficiency in form of the bond, a second was required by the presiding judge, and thereupon another bond was executed by the same obligors, and in the same sum, to Abram Clapp, clerk of the superior court of Guilford, to become void if the said March "shall well and truly discharge all the costs now incurred in said cause, in the event that the said John W. Thomas is not convicted of the offence of perjury aforesaid, and shall well and truly indemnify and save harmless the county of Guilford from all costs now incurred or which may hereafter be incurred by reason of a failure of the state of North Carolina to convict the said John W. Thomas of the crime of perjury aforesaid.

The cause was thereupon removed to the superior court of Rockingham, and at spring term, 1871, was compromised and a *nolle prosequi* entered, the accused paying the prosecutor $6,500 in order to obtain his assent to this disposition of the case, and the said March was adjudged to pay the costs of the prosecution.

The insolvency of March prevented the collection of the sum ($970.34 costs) he was required to pay; the county of Guilford has been compelled to discharge the judgment, and, after demand and refusal of March to reimburse, brings this suit upon the said bonds, claiming as assignee of the clerk a right to recover upon the last, against the said March and the other defendants, Lemly and Shaver, administrators of the deceased obligor, John I. Shaver.

Without inquiring whether the action can be maintained in the name of the board of county commissioners *alone* upon both bonds or either, we shall confine our examination to the force of the objection to a recovery, sustained by the referee and by the court, and brought by the plaintiffs' appeal for our review, to-

wit, that the bonds are contrary to public policy, illegal and void.

The law in force when the bonds were executed and the prosecution came to an end, provides, that "if a defendant be acquitted or judgment against him arrested, the costs, including the fees of all witnesses summoned and actually examined for the accused, whom the judge before whom the trial took place shall certify to have been necessary or proper for his defence, shall be paid by the prosecutor if any be marked on the bill, unless the judge shall certify that there was reasonable ground for the prosecution and that it was required by the public interests." C. C. P., §560; *State* v. *Cockerham*, 1 Ired., 381.

The condition contained in the first bond subjects the prosecutor to the payment of costs in a contingency not provided for in the statute, to-wit: the entering of a *nolle prosequi* by which, in fact, the case was finally disposed of, and thus the bond is not a mere security for a contingent liability, the hazards of which the principal assumed when he became prosecutor, but it super-adds an obligation not recognized in the law.

The condition set out in the second bond is not in excess of the contingent statutory liability to be imposed by the judge, but it imposes an absolute obligation upon the prosecutor upon the rendition of a verdict of acquittal by the accused, and denies the right to appeal to the judge for his certificate "that there was reasonable ground for the prosecution and that it was required by the public interests," when such was his opinion of the facts whereby the prosecutor would be exempt from the costs.

Both bonds thus became, if their validity be upheld, more than mere securities for the fulfilment of a pre-existing liability resting upon the prosecutor personally, inasmuch as they undertake to impose a further and additional liability upon him and upon his associate obligors, the sureties to the bond.

Again, the statute makes no provision for securing the costs which an insolvent prosecutor may be required to pay, nor does it confer authority upon the court to demand it. It does not discriminate between a solvent and an insolvent prosecutor in this

regard, but imposes upon each, one and the same personal obliga-
tion, as it does upon the accused, as the one or the other may be
adjudged to pay the costs of the prosecution.

But a more serious objection lies against the bonds in their ten-
dency to obstruct or prevent the due administration of the criminal
law, and bringing into activity forces unfavorable to its fair and
impartial enforcement. This finds illustration in the course pur-
sued in the conduct of this very indictment. It slumbered for
two and a-half years without action on the part of the solicitor,
we must suppose, because in his judgment the public interests did
not demand a prosecution, and then it is revived by a prosecutor
to accomplish, as the result shows, his private interests, and not
from any sense of public duty, on condition of providing security
for the costs in the event of failure. It seems to have been prose-
cuted with the same steady purpose until he forces from the
accused a large sum of money, and then the prosecution is aban-
doned and the accused let go free without a trial. The criminal
process of the court has thus been successfully used to put money
in the prosecutor's pocket, regardless of the demands of public
justice on the one hand, or on the other to the oppression of an
innocent party. The management of a prosecution should be
steadily retained in the hands of the appointed officer of the law,
not to be permitted to be pressed at the instigation of a private
person when such officer does not deem it his duty to proceed.
Nor ought it to be terminated without a trial, if the accused be
guilty upon the proofs, because the prosecutor has received money
as the consideration of its abandonment and consents to its being
done.

It is obvious that these offered and accepted indemnities have
in a great degree left the prosecution in private hands, and permit-
ted it to be perverted for the attainment of personal advantages
with which the public have no concern. Such fruits indicate the
illegality of the source from which they spring.

The principle is too well settled to require more than its mere
enunciation, that any instrument taken which tends to obstruct

the *firm* and *impartial* administration of public justice, will not be recognized and enforced.

Thus a bond given in lieu of and for an indemnity against a forged instrument surrendered with an agreement that the person whose name was forged should not appear against the accused, unless summoned, is held to be against public policy and void, *Thompson* v. *Whitman*, 4 Jones, 47;

So, an agreement between persons interested in an estate the consideration of which is that they are not to bid at the administrator's sale, *Ingram* v. *Ingram, Ib.*, 188;

And, an agreement by bond to pay a sum of money to the obligee induced by his representation that a relation of the obligor had committed an indictable offence and his promise not to prosecute, *Garner* v. *Qualls, Ib.*, 223;

Or, that the obligee will not appear as a prosecutor or witness against the defendant in a criminal prosecution for the offence, *Vanover* v. *Thompson, Ib.*, 485.

These are all held to be illegal because they contravene the course of public justice.

To the same effect are *King* v. *Winants*, 71 N. C., 469; *Lindsay* v. *Smith*, 78 N. C., 328.

While the effect was direct and apparent in the cases referred to, the tendency of agreements in the same direction, whether to stifle the prosecution or oppressively make use of it for the furtherance of private ends, is equally fatal to the efficacy of the instrument. In neither case will the courts lend their aid to its enforcement.

For these reasons we declare there is no error in the ruling of the court below and the judgment must be affirmed. It is so ordered.

No error. Affirmed.