MRS. LOUISE DICKS MARSHALL ET AL. v. R. P. DICKS ET AL.,
ADMINISTRATORS OF M. C. DICKS, DECEASED.

(Filed 12 December, 1917.)

1. **Contracts, Illegal—Courts.**

   Our courts will not enforce the obligations of an executory contract which is illegal or contrary to public policy or against good morals, or lend their aid to the acquisition or enjoyment of rights or claims which grow out of or are necessarily dependent upon such contracts.

2. **Same—Fraud—In Pari Delicto.**

   A conveyance of lands to defraud or avoid creditors is illegal; and where such is made the ground for recovery by an heir at law, contending that it was so made by his mother to the defendant for her benefit during her life and then in trust for her heirs at law, he and the defendant are *in pari delicto*, and the law will leave them *in statu quo*.

3. **Contracts, Illegal—Fraud—Pleadings—Allegations—Courts.**

   Where the plaintiffs claim land as heirs at law of a deceased grantor who had made, a conveyance of the same with intent to defraud his creditors, and their right to recover is made to depend upon the illegal transaction, it is not necessary that they allege fraud on the part of the defendant, the grantee in the deed, for the court to deny a recovery.

CIVIL ACTION, tried before *Cline, J.,* and a jury, at July Term, 1917, of RANDOLPH.

The action was instituted by plaintiff, two of the children, heirs at

law and distributees of M. C. Dicks, deceased, to enforce the payment
of $5,600, being balance due on a note and mortgage executed by G. F.
Hankins to Mrs. M. C. Dicks (now deceased) and transferred by written
assignment absolute in terms to defendant R. P. Dicks, a son of Mrs.
Dicks, such transfer and assignment alleged by plaintiffs to have been
in trust to collect the proceeds and pay to said M. C. Dicks if living,
and if collected after her death to pay same to her heirs at law, etc.
H. M. Worth, administrator of M. C. Dicks, having failed to sue for
or collect said amount, was made party defendant, the other defendant
being the son, R. P. Dicks, and two daughters, also distributees and
heirs at law of said M. C. Dicks.

At close of the plaintiff's testimony, on motion, there was judgment
of nonsuit, and plaintiff having duly excepted appealed.

*Walser & Walser and Brittain & Brittain for plaintiff.*
*W. C. Hammer, R. C. Kelly, and King & Kimball for defendant.*

Hoke, J.   The evidence on the part of plaintiff tended to show that
during her lifetime, Mrs. M. C. Dicks, now deceased, holding a note and
mortgage on which there was a balance due of $5,600, transferred same
by written assignment absolute in terms to her son, defendant R. P.
Dicks, and at the time of the transfer there was an agreement by parol
that the assignee should hold and collect the note in trust for his mother;
that at such time the said M. C. Dicks was involved in debt and the
transfer was made by her with the intent and purpose to avoid payment
of her debts.   Said M. C. Dicks thereafter died, and the present action
is instituted by plaintiffs, two of her children and heirs at law and dis-
tributees, against R. P. Dicks to enforce an accounting of the proceeds
alleged to have been collected and now held under and by virtue of said
assignment, the other children of deceased being made parties defendant,
and also the administrator of M. C. Dicks, he having declined to join in
said litigation.

Upon these facts, we concur in the view of his Honor below that the
plaintiff should be nonsuited.

It is the fixed principle with us and, so far as we are aware, of all
courts administering the same system of laws, that when the parties are
*in pari delicto* they will not enforce the obligations of an executory con-
tract which is illegal or contrary to public policy or against good morals.
Nor will they lend their aid to the acquisition or enjoyment of rights or
claims which grow out of and are necessarily dependent upon such a
contract.   *Fashion Co. v. Grant,* 165 N. C., 453; *Pfeifer v. Israel,* 161
N. C., 409; *Lloyd v. R. R.,* 151 N. C., 536; *Edwards v. Goldsboro,* 141

MARSHALL *v.* DICKS.

N. C., 60; *Culp v. Love,* 127 N. C., 457; *King v. Winants,* 71 N. C., 469; *Blythe v. Lovinggood,* 24 N. C., 20; *Sharp v. Farmer,* 20 N. C., 255; *McMillan v. Hoffman,* 174 U. S., 639-654; *Battle v. Nutt,* 29 U. S., (4 Pet.), 184; *Armstrong v. Toler,* 24 U. S., 258 (11 Wheat.); 1 Waites Act. & Def., 43.

In *King's case, supra,* it is held as follows: "The law prohibits everything which is *contra bonos mores,* and, therefore, no contract which originates in an act contrary to the true principles of morality can be made the subject of complaint in courts of justice." In *Blythe v. Lovinggood:* "An executory contract, the consideration of which is *contra bonos mores,* or against the public policy or the laws of the State, or in fraud of the State, or of any third person, cannot be enforced in a court of justice." And in *Sharp v. Farmer:* "No action can be sustained in affirmance and enforcement of an executory contract to do an immoral act, or one against the policy of the law, the due course of justice, or the prohibition of a penal statute." And in *Battle's case* (4 Peters), *supra:* "The law leaves the parties to such a contract as it found them. If either has sustained a loss by the bad faith of a *particeps criminis,* it is but a just infliction for premeditated and deeply practiced fraud. He must not expect that a judicial tribunal will degrade itself by an exertion of its powers to shift the loss from one to the other, or to equalize the benefits or burthens which may have resulted from the violation of every principle of morals and of law." And in *Armstrong v. Toler* (11 Wheat.), *supra:* "Where a contract grows immediately out of and is connected with an illegal or an immoral act, the law will not lend its aid to enforce it. So if the contract be in part only connected with the illegal considerations and growing immediately out of it, though in fact a new contract, it is equally tested by it."

The cases in this jurisdiction hold further that a conveyance or contract made between the parties with the intent to delay, hinder and defraud one's creditors comes directly within the principle. *Pass v. Pass,* 109 N. C., 484; *York v. Merritt,* 80 N. C., 285.

It is urged in behalf of plaintiffs that the position is not open to defendants on the record, for the reason that there are no allegations of fraud in the pleadings, but this, too, must be resolved against the appellants. Where a litigant is making a fraud perpetrated on him the basis of his claim, or is seeking to set aside deeds or contracts on that ground, then the fraud charged must be averred and ordinarily the essential facts must be set forth with sufficient fullness and accuracy to indicate the fraud charged and to apprise the offending party of what he will be called on to answer (*Mottu v. Davis,* 151 N. C., 238); but the principle has no application to cases like the present, and, so far as examined, the Courts have uniformly held that wherever it appears, and with or

without averment in the pleadings, that a litigant is asking the aid of the Court in the enforcement of rights growing out of an illegal or immoral transaction and dependent upon it, relief or recovery is denied. As said in some of the cases, it is not that the Courts favor the one or the other, but it declines to interfere and leaves the parties where they have placed themselves by the unlawful or iniquitous agreement.

In *Cansler v. Penland,* 125 N. C., 578, it was held in effect that, in such case, the law withdraws its support as soon as the illegality of a contract is discovered, and *Faircloth, C. J.,* delivering the opinion, quotes with approval from *Coppel v. Hall,* of Wallace, 74 U. S., 542, as follows: "The defense is allowed, not for the sake of the defendant but of the law itself. It will not enforce what it has forbidden and denounced. . . . Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded on its violation." And to like effect is *Oscanyan v. Arms Co.,* 103 U. S., 261; *Reid v. Johnson,* 67 Pac., 381; *Sheldon v. Pruessner,* 35 Pac., 201; *Cumberland Tel. & Tel. Co. v. City of Evansville,* 127 Fed., 187-198; *Richardson v. Buhl,* 77 Mich., 632.

In *Richardson's case, supra,* it was held: "Courts of their own motion will take notice of illegal contracts which come before them for adjudication and will leave the parties where they have placed themselves." And, in *Sheldon v. Pruessner, supra:* "The courts, in the due administration of justice, will not enforce a contract in violation of law, or permit plaintiff to recover upon a transaction in violation of public policy, even if the invalidity of the contract or transaction be not specially pleaded.

In the present case the owner, having in her lifetime, by written assignment, absolute in terms, transferred the note and mortgage in question to defendant, the plaintiffs claiming as volunteers, can only recover by establishing the agreement as alleged and relied on that the assignee was to hold in trust for the owner, and that the facts showing that this transaction was for the purpose of hindering, delaying and defrauding creditors of the owner. The law leaves the parties where they have placed themselves in reference to the property and, on the record, we must hold that recovery has been properly denied.

No error.