J. P. JOHNSON v. J. J. PITTMAN AND R. L. PITTMAN.

(Filed 28 September, 1927.)

**1. Bills and Notes—Consideration — Criminal Law — Threats — Public Policy—Actions.**

Where the plaintiff has obtained the signature of the defendant on a promissory note jointly with his brother, under a threat to have the latter indicted at once for giving plaintiff an unhonored check on the bank, without duress, and the plaintiff in consequence has abandoned a suit in which attachment proceedings had been issued against the defendant's brother and another in whose possession the property attached was at the time: *Held*, the bare threat against the defendant's brother did not amount to compounding a felony or stifling a criminal prosecution, and the note itself being founded upon a sufficient legal consideration is valid and enforceable against the defendant.

**2. Same—Pleadings—Issues—Instructions—Appeal and Error.**

Issues should arise from the pleadings in the cause, and where it is alleged in the answer that the note sued on was obtained under an agreement that was unlawful and the note therefore unenforceable, the submission of an issue as to whether the note in suit was obtained from the defendant to prevent a criminal prosecution is insufficient, did not arise from the pleadings and is reversible error, and an instruction predicated thereon is also error.

CIVIL ACTION, before *Harris, J.,* at February Term, 1927, of HARNETT.

The plaintiff instituted this action against J. J. Pittman and his brother, R. L. Pittman, to recover upon a promissory note for $3,112.50 executed by the defendants to the plaintiff.

The evidence tended to show that on or about 29 December, 1924, plaintiff sold and delivered to the defendant, J. J. Pittman, sixty-nine bales of cotton. J. J. Pittman gave in payment for the cotton a check drawn on the Merchants and Farmers Bank of Fayetteville for the sum of $7,757.52. The plaintiff presented the check in due course for payment and the same was protested. Thereupon, on 1 January, plaintiff instituted a suit against J. J. Pittman, Weatherford-Crump Co., Southern Railway Co., and Farmers and Merchants Bank of Fayette-

ville, and issued a warrant of attachment and claim and delivery. J. J. Pittman had consigned the cotton to Weatherford-Crump Company, and it had been delivered to the Southern Railway for transportation and was then in transit. J. J. Pittman paid the plaintiff approximately $4,646.00, leaving a balance due of $3,112.50. The defendant Pittman testified that the Weatherford-Crump Company had deducted something over $3,000 from his draft to cover shortage in weight of cotton sold by him on prior occasions to said Weatherford-Crump Company, and that this was done without his knowledge or consent, and for this reason his check was not good.

After the civil action had been instituted by the plaintiff he telephoned the defendant, R. L. Pittman, to know if he could tell him anything as to the whereabouts of his brother, J. J. Pittman. R. L. Pittman testified that the plaintiff told him "that he had had a lot of trouble about a cotton transaction he had with him (J. J. Pittman), had a check returned unpaid, and that he had to have his money, and if he did not have it by the next day or something to take the place of it that he was going to indict him (J. J. Pittman), have him arrested and put in jail. . . . On the following morning he called me again and told me that unless he had the money or that matter was arranged by 2 o'clock that he would see that he (J. J. Pittman) was arrested and put in jail, and that if he wanted to take the matter up further that he could do so with his attorneys, Clifford & Townsend. In the meantime my brother came in from Charlotte on the 11:45 train that day. I signed a note for nothing in the world except to keep my brother from being arrested and put in jail. I received nothing of value and did not owe the plaintiff anything. I signed the note about 12 o'clock. He had given us until 2 o'clock to get the matter closed with his attorneys, and my brother carried the note to Lillington the same day and delivered it to Mr. Young, attorney for defendants, with instructions to deliver it to Clifford & Townsend, attorneys for plaintiff."

When the note fell due the defendant, R. L. Pittman, asked for an extension of time. This was granted and the defendants executed a renewal note. When the note fell due a second time the defendant, R. L. Pittman, again requested and received indulgence, and signed a renewal note, dated 15 July, 1925, and due 15 October, 1925, which is the note upon which the suit was brought. In October, 1925, the defendant Pittman refused to pay the note, alleging that the consideration thereof was illegal and against public policy, and that the note was void. J. J. Pittman, who purchased cotton from the plaintiff, is insolvent.

JOHNSON *v.* PITTMAN.

The issues and answers of the jury thereto are as follows:

1. Did the defendant, R. L. Pittman, execute the note sued upon to prevent a criminal prosecution of his brother, J. J. Pittman, threatened by the plaintiff? A. Yes.

2. Was the indebtedness represented by the note sued on contracted through the false and fraudulent representations of J. J. Pittman, as alleged in the complaint? A. No.

3. If so, what damages did the plaintiff sustain thereby? A. $3,112.50.

4. Did the defendants fraudulently conspire and confederate together, and thereby induce the plaintiff to accept their joint note for the indebtedness of J. J. Pittman with no bona fide intention of paying said note, and thereby induce the plaintiff to take a nonsuit in the case of J. P. Johnson against the Southern Railway Company, and others, thereby surrendering securities held by the Southern Railway Company and Weatherford-Crump Company, one or both, to the damage of the plaintiff? A. No.

5. If so, what damages is the plaintiff entitled to recover on account of the same? A. .............

From judgment upon the verdict plaintiff appealed.

*J. C. Clifford for plaintiff.*
*Young & Young for R. L. Pittman.*

BROGDEN, J. Is a bare threat to procure a warrant or to have a person arrested upon a criminal charge sufficient to invalidate a note given for a valid debt, arising out of contract?

There is no allegation of duress in the complaint and no evidence thereof in the record except the threat made by the plaintiff to have the defendant, J. J. Pittman, arrested. So that the inquiry is narrowed to the sole question as to whether or not the threat made by the plaintiff constitutes compounding a felony or stifling a criminal prosecution, or obstructing the full and free exercise of the law with respect to the particular case and the unhampered and unhindered application of the law to trial and punishment of the accused. It is a general rule of law in this jurisdiction, running like a golden thread through the decisions from *Smith v. Greenlee,* 13 N. C., 126, to *Aycock v. Gill,* 183 N. C., 271, that all executory agreements to compound felonies, to stifle criminal prosecutions of any and all kinds; to suppress evidence or to hinder or retard the full weight and the free course of the criminal law are contrary to good morals, enlightened conscience and public policy, and therefore void; and further that all notes or bonds given in recognition of such and upon such illegal consideration are invalid and not collectible.

There are many decisions of this Court declaring the invalidity of executory contracts of this nature.

Agreements which have been held void in this State as contrary to public policy may be classified as follows:

1. To chill bidding at a public sale or to retard or paralyze open and fair competition. But the rule does not extend so far as to prevent several individuals from uniting in their bidding, if it is done in good faith and without an inequitable or illegal purpose. *Smith v. Greenlee,* 13 N. C., 126; *Blythe v. Lovingood,* 24 N. C., 20; *Bailey v. Morgan,* 44 N. C., 352; *Ingram v. Ingram,* 49 N. C., 188; *King v. Winants,* 71 N. C., 469; *Henderson-Snyder Co. v. Polk,* 149 N. C., 104.

2. To assent to a *nol. pros.* of a criminal case in consideration of the payment of a sum of money. *Comrs. v. March,* 89 N. C., 268.

3. Not to prosecute for crime. *Garner v. Qualls,* 49 N. C., 223.

4. Not to appear as a witness against the accused. *Thompson v. Whitman,* 49 N. C., 48; *Vanover v. Thompson,* 49 N. C., 486.

5. To settle the estate of an intestate without taking out letters of administration, or taking the oath required or giving bond. *Sharp v. Farmer,* 20 N. C., 122.

6. Giving a note for purchase price of stock in a railroad, for purpose of enabling the company to secure state funds, with agreement that note was not to be paid. *McRae v. R. R.,* 58 N. C., 395.

7. Securing a note and mortgage from a mother upon agreement not to prosecute her son. *Corbett v. Clute,* 137 N. C., 546.

8. To "request court to be as lenient as possible" with one accused of crime or to mitigate the punishment. *Aycock v. Gill,* 183 N. C., 271.

9. To withdraw a pending indictment. *Lindsay v. Smith,* 78 N. C., 328.

In other jurisdictions the following executory agreements have been held void as contrary to public policy:

1. To destroy the evidence in a criminal case, to wit, a bottle of liquor. *S. v. Carver,* 69 N. H., 216; 39 Atl., 973.

2. To have a husband discharged from arrest if the wife would execute a note. *Jones v. Dannenberg Co.* (Ga.), 37 S. E., 729.

3. Not to have the defaulting cashier of a bank arrested. *American National Bank v. Helling* (Minn.), 202 N. W., 20.

4. Not to prosecute for purchasing stolen hides. *Fred Rueping Leather Co. v. Watke* (Wis.), 116 N. W., 174.

5. Promise to sign or be more likely to sign a petition for mitigation of punishment. *Buck v. Bank,* 27 Mich., 293.

In all the cases in North Carolina it appears that in each instance when the executory contract was made that there was an unlawful

agreement, and this unlawful agreement, express or reasonably implied from all the circumstances, constituted the corrupting and invalidating vice of the transaction.

The various angles and aspects of the question are discussed in an exhaustive annotation found in 17 A. L. R., 325.

Our conclusion based upon all the decisions in this State, and also upon a large number of decisions in other jurisdictions, is that the mere threat of arrest contained in the present record does not of itself render the note in controversy void.

The first issue was submitted to the jury over the objection of plaintiff. This objection is sustained. The issue omitted the essential element of unlawful agreement between the parties at the time the note was executed. The issue submitted in *Corbett v. Clute, supra,* contains the essential elements prescribed by the law in such cases. Furthermore, the defendant alleged in the answer that the plaintiff "promised the defendant and the said J. J. Pittman that if the defendant would execute and deliver to the plaintiff the said note covering the amount of the alleged claim and the shortage on the part of said J. J. Pittman, that the plaintiff would not institute said criminal action and indictment against the said J. J. Pittman, but would forbear from said action. Issues ordinarily arise upon the pleadings, and the form of issue submitted did not present the question as set up in the pleadings.

The judge charged the jury: "(Now the defendant, R. L. Pittman, says that he is not liable on this note for the reason that he executed this note for the purpose of saving and keeping his brother, J. J. Pittman, from being arrested and put in jail, and that that was the only consideration for which he signed this note, and no other.

Now, the court will charge you, gentlemen, in the outset that if you believe by the greater weight of the evidence—the burden being on the defendant, R. L. Pittman, to satisfy you by the greater weight of the evidence—that that was the consideration for which he signed this note and nothing else, that the law says that is against public policy, and he would not be liable on this note. If you believe by the greater weight of the evidence that was the only consideration for which he signed, namely, that he signed it in order to keep his brother, J. J. Pittman, from being arrested and put in jail; if you are not so satisfied by the greater weight of the evidence, then you would find that he is liable on this note which he executed and signed; that is his only defense, and if so, he was not liable and ought not to pay it, and judgment could not be rendered against him, if he signed it for that reason and that reason only."

The plaintiff excepted to the charge and the exception is sustained.

The vital question in the case was not whether the defendant, R. L. Pittman, was desirous of keeping his brother out of jail, but whether or not he endorsed the note for his brother by reason of an unlawful agreement.

Upon consideration of the entire record, we hold that the plaintiff is entitled under the law to a

New trial.