Rose v. Materials Co.

## T. W. ROSE v. VULCAN MATERIALS COMPANY

### No. 7221SC349

### (Filed 23 August 1972)

1. **Contracts § 7; Monopolies § 2— sale of stone — contract in restraint of trade**

    A contract wherein plaintiff leased his quarry to defendant and defendant agreed to sell stone to plaintiff at specified prices and to sell stone to others at no less than specified higher prices violated state and federal antitrust laws and was void. G.S. 75-5(b)(5); Robinson-Patman Act, 15 U.S.C.A. § 13(A).

2. **Contracts § 7; Monopolies § 2— breach of contract violating antitrust laws**

    A party cannot recover damages for breach of a contract which violates antitrust laws.

    Judge BRITT dissents.

APPEAL by defendant from *Long, Judge,* 1 November 1971 Session of Superior Court held in FORSYTH County.

This is a civil action wherein plaintiff, T. W. Rose, seeks to recover damages from breach of contract from the defendant, Vulcan Materials Company. After a trial without a jury, the court made findings of fact which, except where quoted, are summarized as follows:

Plaintiff, T. W. Rose, is a resident of Yadkin County, North Carolina. In December, 1958, and continuing until his retirement in 1969, plaintiff was engaged in the ready mix cement business. Defendant, Vulcan Materials Company (Vulcan), is a corporation doing business in several states, including North Carolina.

Plaintiff owned a stone quarry in Yadkin County. In January 1959, plaintiff entered into two agreements (Exhibits A and B) with J. E. Dooley & Sons, Inc. (Dooley). In essence, Exhibit A was a lease agreement under which plaintiff leased his quarry in Yadkin County to Dooley for ten years. To supplement the lease agreement (Exhibit A) and as an integral part of the total agreement between the parties, plaintiff and Dooley executed a contract (Exhibit B) whereby, "Plaintiff also agreed that he would not engage in the rock crushing business, nor permit anyone else to do so, in his quarry site, described in Exhibit A, other than J. E. Dooley and Son, Inc., or the Stone

Mining Company," and "Dooley agreed to furnish the plaintiff stone F.O.B. the quarry site at Dooley's quarry in Cycle, North Carolina, at the price specified in the contract." Plaintiff and Dooley complied with the terms of their contract from 1 January 1959 until April 1960 when Dooley advised plaintiff that he had an offer to sell his quarry operation to defendant and requested that plaintiff release Dooley from the terms of the two contracts. Plaintiff agreed to do so on condition that defendant, Vulcan, agree in writing to comply with all of Dooley's obligations under the contracts. On 12 April 1960 Vulcan executed a written agreement to assume and discharge all of Dooley's obligations. On 25 April 1960, Vulcan wrote plaintiff and acknowledged purchase of the stone crushing operation of Dooley and that it had in its possession the two contracts between plaintiff and Dooley. The letter also stated, "This is to advise that Vulcan Materials Company assumes all phases of these contracts and intends to carry out the conditions of these contracts as stated."

From April 1960 until May 1961, Vulcan continued to sell stone to plaintiff at the specified contract prices. On 11 May 1961 defendant increased the price of stone to the plaintiff to a level in excess of the prices specified in the contracts. Plaintiff threatened suit should the price of stone be increased but continued to purchase stone from Vulcan because he had no other practical source. "In this action, he seeks to recover the difference between the prices set forth in the contracts, and the prices actually paid by him. The total amount of this differential is $25,231.57 which represented payments by plaintiff to defendant over the period from May, 1961 through December, 1968."

Based on its findings of fact, the court, among other things, concluded as a matter of law that "The contracts, plaintiff's Exhibits A and B, were valid contracts and at all times complained of, were binding on the defendant, at least with respect to the specified prices to plaintiff for stone and the obligation of defendant to sell stone to plaintiff at such prices."

From a judgment that plaintiff have and recover of the defendant the sum of $25,231.57 with interest at the rate of 6% per annum from the date of each payment, the defendant appealed.

---

Rose v. Materials Co.

---

*Hudson, Petree, Stockton, Stockton & Robinson by W. F. Maready for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice by Charles F. Vance, Jr., and John L. W. Garrou for defendant appellant.*

HEDRICK, Judge.

Plaintiff's claim is based on defendant's alleged breach of the following portion of Exhibit B:

"Witnesseth, that the seller agrees to furnish the buyer stone F.O.B. the quarry site at Cycle, North Carolina at the following prices:

| | | |
|---|---|---|
| Crusher run stone | @ $1.25 | per ton |
| Clean concrete stone | @ 1.60 | per ton |
| No. 11 stone | @ 2.00 | per ton |

It is mutually agreed that the seller of this stone will keep someone at Cycle, North Carolina, at least five days a week to weigh and load the stone the buyer should need.

. . . .

J. E. Dooley & Son, Inc., agree that they will not sell any stone to anyone other than the State Highway Commission for prices less than the following from the Cycle Quarry:

| | | |
|---|---|---|
| Crusher run stone | $1.50 | per ton |
| Clean Concrete stone | 1.80 | per ton |
| No. 11 stone | 2.00 | per ton |

The above restrictions shall apply only to an area of an eight mile radius of Elkin, North Carolina, and shall apply for a period of ten years from the date of this contract."

Defendant assigns as error the court's conclusion of law that the two agreements (Exhibits A and B) between the plaintiff and Dooley were valid contracts and at all times complained of, were binding on the defendant, at least with respect to the specified prices to plaintiff for stone and the obligation of defendant to sell stone to plaintiff at such prices.

Defendant contends " . . . that each of these contracts was illegal and void on its face and that the Plaintiff may not main-

tain an action for breach of these contracts in order to recover the difference between the specified prices at which he was to be sold stone under the contracts and the prices he was charged when the Defendant became aware that the contracts were illegal."

The question thus presented for our determination is whether the contract sued on (Exhibit B) is in fact "illegal and void on its face."

G.S. 75-5 (b) provides:

"In addition to the other acts declared unlawful by this chapter, it is unlawful for any person directly or indirectly to do, or to have any contract express or knowingly implied to do, any of the following acts:

(5) While engaged in dealing in goods within this State, at a place where there is competition, to sell such goods at a price lower than is charged by such person for the same thing at another place, when there is not good and sufficient reason on account of transportation or the expense of doing business for charging less at the one place than at the other, or to give away such goods, with a view to injuring the business of another."

The Robinson-Patman Act, 15 U.S.C.A. § 13 (A) provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them."

[1]  It seems clear that the contract on which plaintiff bases his action violates both state and federal statutes.

The contract contains discriminatory and preferential prices which, if enforced, could have had the deleterious and illegal effect of harming or destroying plaintiff's competition. Such is clearly forbidden by G.S. 75-5(b)(5) and the Robinson-Patman Act, 15 U.S.C.A. § 13(A).

With the exception of "#11 stone" the rates to be charged to plaintiff under the contract were at least $.20 per ton less than that charged to plaintiff's competitors. Plaintiff's claim and the court's findings and conclusions amply illustrate the significance of these preferential prices. Had defendant honored the provisions of these illegal contracts, plaintiff would have benefited to the extent of $25,231.57 over his competitors.

The discriminatory pricing cannot be justified under the exception contained in G.S. 75-5(b)(5) " . . . on account of transportation . . . " since the stone was to be furnished to plaintiff " . . . F.O.B. the quarry site at Cycle, North Carolina. . . . "

The contract relied upon is clearly illegal and unenforceable.

The trial court's findings that the agreements were supported by consideration has no legal significance in determining whether the agreements were in violation of the antitrust laws.

It is the rule in North Carolina that in the case of an illegal contract the courts will leave the parties as it finds them and will do nothing to enforce the agreement. *Marshall v. Dicks,* 175 N.C. 38, 94 S.E. 514 (1917); *Florsheim Shoe Co. v. Leader Department Store,* 212 N.C. 75, 193 S.E. 9 (1937). The court will not adjudge liability against a defendant for refusing to do that which the law makes it illegal for him to do. *Hanauer v. Doane,* 12 Wall. 342, 20 L.Ed. 439 (1871); *Continental Wall Paper Company v. Louis Voight & Sons Co.,* 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1908).

[2] It is clear that an agreement that violates the antitrust laws is void and unenforceable and that the illegality of a contract on the grounds that it violates the antitrust laws is a defense against a suit for damages. *Standard Fashion Company v. Grant,* 165 N.C. 453, 81 S.E. 606 (1914); *Florsheim Shoe Co. v. Leader Department Store, supra; Arey v. Lemons,* 232 N.C. 531, 536, 61 S.E. 2d 596 (1950); *Electronics Co. v. Radio Corp.,* 244 N.C. 114, 92 S.E. 2d 664 (1956).

---

In the last cited case, Bobbitt, J., now C.J., stated, "If the contract is illegal, either at common law or by reason of statutory provisions relating to monopolies and trusts, G.S. 75-1 *et seq.*, plaintiff cannot recover damages for breach thereof."

For the reasons stated the judgment is

Reversed.

Judge PARKER concurs.

Judge BRITT dissents.