LESLIE G. FRYE v. FRANCES A. SOVINE

No. 8121SC1084

(Filed 7 September 1982)

**Contracts § 6; Duress § 1— note and deed of trust—suppressing criminal prosecution—invalid consideration—duress**

    A note and deed of trust signed by the seventy-year-old respondent were void as against public policy where there was an implied agreement that if respondent signed the documents, there would be no further prosecution on criminal charges against her son for two worthless checks given by the son to the beneficiary of the note and deed of trust. Furthermore, the documents were also void on the ground that they were executed by respondent under coercion and duress where she signed the documents as a result of the beneficiary's harassment of her by repeated visits and telephone calls.

APPEAL by petitioner from *Wood, Judge.* Judgment entered 19 June 1981 in Superior Court, FORSYTH County. Heard in the Court of Appeals 26 May 1982.

This is an appeal from an order dismissing the Petition for Order of Foreclosure filed by petitioner-trustee. The action arose out of a business transaction between respondent's son, Michael Sovine, and the beneficiary of the note and deed of trust, Robert Barrett. Barrett financed the purchase of used automobiles which Sovine then sold for profit to be divided between the two. After Sovine gave two worthless checks to Barrett, Barrett had two warrants issued against Sovine on 27 January 1979.

On 20 February 1979 Sovine and his mother executed a promissory note in the principal amount of $14,500 payable to Barrett. Mrs. Sovine also executed a deed of trust granting to Barrett a security interest in her home.

On 5 March 1979 the worthless check warrants against Sovine were dismissed by the court.

Sovine defaulted on the note after making two payments. On 9 August 1979, petitioner instituted foreclosure proceedings against Sovine. He appealed and sought a trial *de novo* after the Clerk of Court refused to authorize him to proceed with the foreclosure.

Barrett and Mrs. Sovine testified at the hearing before Judge Wood on 4 June 1981. The court held that the note and deed of

trust were void and unenforceable on the ground that respondent executed them as a result of coercion and duress and under threats of imprisonment of her son and also on the ground that dismissal of the criminal warrants against her son did not constitute valid consideration. Petitioner appeals from the Order dismissing the action and cancelling the deed of trust.

*Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown by Charles O. Peed for petitioner appellant.*

*Bell, Davis & Pitt by Walter W. Pitt, Jr., for respondent appellee.*

MORRIS, Chief Judge.

Petitioner assigns error to the court's findings of fact and conclusions of law concerning respondent's signing the note and deed of trust as a result of duress and threats of her son's imprisonment. In a non-jury trial the court's findings of fact are conclusive upon appeal if there is evidence to support them, even though the evidence might also support findings to the contrary. *Williams v. Insurance Co.,* 288 N.C. 338, 218 S.E. 2d 368 (1975).

The evidence presented by Barrett's testimony and respondent's testimony and affidavit support the court's findings of fact and conclusions of law. The evidence showed that after Barrett caused the warrants to be issued against Sovine, he visited respondent's home numerous times, trying to locate Sovine to obtain the money Sovine owed to him. Barrett asked her if she would take care of her son's debt and put up her house as security. Respondent refused, stating that she was a widow, 70 years old and retired, living on a fixed income. Her son never asked her to sign the note and deed of trust, because he knew she would refuse to do so. She testified that she finally signed the note and deed of trust drawn up by Barrett's attorney, for the following reasons:

"[Y]es, he [Barrett] did threaten me to a certain extent. He told me if I didn't sign this, that Mike would get 18 months and he would see that he did, and you know, when something happens like that with your child, and all, you do most anything.

\*　\*　\*　\*

Well, I had to sign them. I'd had a month of that. A whole month, and when anyone has two checks in your hand and waves them at you every time they come to your house and he was there one day three times . . . . I think most anybody would do anything to get rid of something like that.

In her affidavit, respondent stated:

7. I am seventy years old and a widow. I live alone. I was frightened of Mr. Barrett. I was nervous and scared every time I saw him coming. I never knew what time of the day or night he would show up at my door or call me on the telephone. Every time I saw him, I asked him to leave me alone, but he ignored my pleas. During this period of time, I couldn't sleep; I was worried and frightened. I suffered a great deal of aggravation over Mr. Barrett's visits and telephone calls. I also lost seven pounds during this period.

8. The only reason I signed the papers was because I was afraid of what Mr. Barrett would do to me or Mike. Also, I was emotionally upset and couldn't take his continually harassing and dogging me to death to get me to sign the papers. I signed the papers just so that he would not put Mike in jail and so that he would stop his harassment and im-portuning. I have never made any payments to Mr. Barrett and signed his papers only because I felt that I was forced to do so in order to save my son from jail and to preserve my own health and peace of mind."

It can be reasonably implied from the circumstances sur-rounding this transaction that respondent believed that by sign-ing the documents, she would prevent Barrett from pursuing any further criminal prosecution and subsequent imprisonment of her son. It is well-settled law that executory agreements such as the one before us made in consideration of preventing, refraining, or suppressing prosecution for a crime are void as against public policy. *Johnson v. Pittman,* 194 N.C. 298, 139 S.E. 440 (1927); *Corbett v. Clute,* 137 N.C. 546, 50 S.E. 216 (1905); *Garner v. Qualls,* 49 N.C. 223 (4 Jones 1856); 17 Am. Jur. 2d *Contracts* §§ 200-204 (1964). Barrett denied that he had threatened respondent or prom-ised her anything to get her to sign the documents. However, he admitted that he had no further interest in prosecuting on the warrants once the note and deed of trust were signed and that he

had agreed to have the warrants dismissed. We hold under these particular facts that there was an implied agreement that if respondent signed the documents, there would be no further prosecution on the criminal charges against her son. There appears from the record no other consideration for respondent's signing since Barrett had never loaned her anything, she received nothing from him, and she had no connection whatsoever with the business relationship between Barrett and her son.

The evidence is also clear that respondent signed under coercion and duress. Respondent felt that Barrett was harassing her by his repeated visits. Because of the effect which Barrett's actions had upon respondent, we find that she was induced to execute the documents under circumstances which deprived her of the exercise of her own free will, which constitutes duress. *Link v. Link,* 278 N.C. 181, 179 S.E. 2d 697 (1971).

We hold, therefore, that the findings of fact were fully supported by the evidence and that the findings support the conclusions of law. Since execution of the note and deed of trust was procured by coercion and duress and based upon illegal consideration of suppressing criminal prosecution, the instruments are void between the parties and the foreclosure proceeding was properly dismissed.

The court's order dismissing the action and cancelling the deed of trust is

Affirmed.

Judges MARTIN and BECTON concur.