ELBERT WARD, by his next friend, v. ODELL MANUFACTURING COMPANY.

(Decided November 22, 1898).

*Evidence — Negligence — Judge's   Charge — Fellow-Servant.*

1. Where inconsistent statements are made by a witness, it is error for the Judge to assume which is correct; it is for the Jury, in the light of all the evidence, to determine that.

2. Negligence is not a pure question of law, unless where the facts are undisputed, or a single inference only can be drawn from the evidence.

3. Where the evidence tends to show that improper implements are furnished by an employer to a workman to do his work, and injury to a fellow workman ensues, it is for the jury to determine from the evidence, who is responsible in damages to the injured party.

WARD *v.* MANUFACTURING CO.

CIVIL ACTION for damages for alleged negligence tried before *Starbuck, J.*, and a jury, at February Term, 1897, of IREDELL Superior Court.

The plaintiff was a boy eleven years of age who was employed about the factory as a quill carrier, which required his moving about over the room, and while thus employed he was seriously injured by a piece of iron wire flying from the work bench where wires were being cut by another employee. The wires were cut both with a cold chisel and with nippers—there was evidence tending to show that it was dangerous to use either— and there was evidence tending to show that the danger was confined to the use of the chisel, and that the injury was occasioned by its use. There was also evidence tending to show that the defendant supplied both instruments for the purpose of cutting wire for mending chains. One of the witnesses for the defendants, named Suter, boss of the section where the work-bench stood, during the course of his evidence stated : "Fragments likely to fly off in cutting wire with nippers" —afterwards stated : "Don't think there was any danger in cutting wire with nippers."

There was a verdict for defendants. Appeal by plaintiff.

The exceptions to his Honor's charge are adverted to in the opinion.

*Messrs. Armfield & Turner* and *H. P. Grier*, for plaintiff (appellant).

*Messrs. Long & Long* and *W. J. Montgomery*, for defendants.

MONTGOMERY, J : This action was brought by an infant of eleven years, through his next friend, to recover

damages of the defendant for a personal injury alleged to have been suffered by the plaintiff through the negligent keeping and use of a work-bench and tools, by the defendant, in the manufactory where the plaintiff was employed.

In the building of the defendant company in which was manufactured its goods, there was at the time of the alleged injury of the plaintiff, a very large room divided into two well defined sections, but by an imaginary line, each section being under the control of a superintendent, who was called a "boss" and who supervised the machinery and controlled the employees. The plaintiff worked under the supervision of Ward, one of the section bosses, his business being to carry quills from the looms to the quillers, and the work-bench at which the plaintiff alleged he was injured was in the corner of the room and in the section under the control of Suter, another section boss. Upon this work-bench were nippers and also a cold-chisel and hammer and other tools, with which wires were cut to be used in the business of the defendant. The plaintiff testified on the trial below that on the day he was injured the quill carrier in Suter's section was sick, and that he was instructed by Ward to do the work of the other boy in addition to his own, and that his duties took him all over the room ; that in carrying quills to the quiller room he had to pass about 5 feet from the bench and between a loom and the bench. He said he could have gone up the middle of the room, but it would have been much further ; that at the bench they would cut wires by setting the cold-chisel and then hit it with a hammer ; that he did not know there was any danger in passing the bench, and that while engaged in his work and as he was passing a piece of wire flew from the work-bench and struck

him in one eye, inflicting a serious injury. The main contention of the plaintiff's counsel was that the defendant was negligent in allowing the work-bench and tools and the work thereon and therewith to be carried on in its manufactory, so close to the pass-way along which the plaintiff and other employees were compelled or permitted to go in the discharge of their duties as to make it dangerous to pass by while the work was going on. Another contention of the plaintiff was that, even if the act of the defendant in keeping the work-bench and tools and the use of the same for the purposes described by the witnesses was not in itself negligence, yet that the manner in which the tools were used on the occasion when the plaintiff was injured was imprudent and negligent. His Honor instructed the jury on these points as follows: "I will tell you that the mere having and maintaining of the work-bench and those tools used for the purposes for which witnesses say they were used, was not in itself negligence, because the evidence shows that the bench could have been operated and the work necessary to be done upon it could have been performed without injury to any one if proper precautions had been taken." We think that there was error in that instruction and that the error arose from his Honor's inadvertance to or misunderstanding of a part of the evidence. The evidence on this point was not all one way. There was evidence tending to prove that it was dangerous to cut wires on the bench with either chisel or nippers. The witness Ryan said that nippers were furnished by the defendant with which to cut the wires, and that if nippers were used wires would not fly out. The witness Wood said "that wires were cut with nippers which always stayed on the bench and that there was no danger in using nippers." But Suter, who was

the boss in charge of the section in which the bench was, said "We did not allow the boys to work around the work-bench, there would be danger in a boy's being around while wire is being cut. Fragments are likely to fly off in cutting wire with nippers." It is true that this witness (Suter) also said "that the proper way to cut wires was with nippers and that the company furnished nippers for that purpose; and he also said he did not think there was any danger in cutting wires with nippers—a statement inconsistent with his first statement. Whatever effect that inconsistency may have had upon his evidence he unmistakably said that fragments were likely to fly off in cutting wires with nippers, and the jury ought to have been allowed to say whether or not such flying off of fragments of the wires from being cut with nippers was dangerous under the particular circumstances of this case.

Negligence is not a pure question of law unless from the evidence a reasonable person could draw only one inference as to whether it existed or not *Tillett* v. *Railroad*, 118 N. C., 1031. In *Ellerbee* v. *Railroad*, the Court said: "It is the province of the Court, where the facts are undisputed or where but a single inference can be drawn from the testimony, to instruct the jury whether either of the parties has been negligent and what culpable act must be deemed the proximate cause of an injury. Where the facts are in dispute, or more than one inference might be drawn from the testimony by fair minded men, it is the duty of the court to instruct the jury, when requested to do so, whether in any aspect of the case arising out of the testimony the acts of either party would constitute culpable carelessness; but in such cases it is always the province of the court to tell the jury that they are to determine whether,

WARD *v.* MANUFACTURING CO.

under all the circumstances, the party charged with culpability acted as would the ideal prudent man, and to make their verdict depend upon their decision of that question."

His Honor further instructed the jury that "the mere having of the work-bench and the tools in the room apart from other considerations would not amount to negligence in itself, and if you find that the work-bench and the tools were used in a proper and prudent manner, as I will hereafter explain, then you will answer the first issue 'No', in favor of the defendant." A part of the explanation of that instruction was as follows : "If you find that the safe way to cut wire was with nippers and that the defendant furnished nippers for the cutting of the wire, and the witness Ryan used a chisel to cut the wire and by so doing hurt the plaintiff's eye, it was the negligence of Ryan (a fellow servant) for which the defendant would not be liable, and you should respond 'no' to the first issue, unless Wood —as the representative of the company—was responsible for this negligence, as I will hereafter explain."

If we are right in our conclusion that there was error in the first instruction pointed out, then the same error appears in the last instruction. His Honor assumes that the cutting of the wires with nippers was a safe way to cut them. As we have said, the evidence about that matter was conflicting and it should have been left to the jury for their finding.

But, besides that, there was further error in the last instruction. According to the testimony of the defendant's witness Suter, it was the duty of Wood, another boss of a section, and himself to do this work. He said, "Wood and I had control of this room, employees and machinery. Work-bench there for making picking

sticks and filling up chains. It was the duty of Wood and myself to do this work. The boys did go and do this work. If they wanted to use hammer and chisel for the purpose of cutting wires *they were there for that purpose.*" And J. Carter, another witness for the defendant, said he was a loom-fixer and that he never used a chisel for small wire, but used it for cutting large wire. That evidence tended to show that the defendant put the chisel and wire upon the bench for the purpose of having the wires cut with it, as well as with the nippers; and the matter ought to have been submitted to the jury under instructions that if they believed that testimony they ought to find that the injury to the plaintiff was caused by the defendant's negligence and not by Ryan's; that is if they believed from the evidence that Suter was a vice principal of the defendant and that he had instructed Ryan to cut these wires under the evidence in this case.

We think the issues as submitted, were sufficient; that the burden of proof to show negligence was on the plaintiff (*Hudson* v. *Railroad*, 104 N. C., 491), and that the charge of his Honor on the law governing negligence, as applicable between employers and employees of tender years, was correct, and substantially what the plaintiff requested him to charge. For the errors pointed out, however, there must be a new trial.

New trial.

FURCHES, J., did not sit on the hearing of this case.