### T. H. POE v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 30 October, 1912.)

1. **Nonsuit—Appeal and Error—Plaintiff's Evidence—Contradictory.**

   The court on an appeal from a judgment of nonsuit, in viewing the evidence in the light most favorable to the plaintiff, cannot act upon a portion of the testimony of plaintiff's witness which sustains the contention of the defendant, though such testimony impairs the force of the other statements made by him.

2. **Telegraphs—Negligence—Delay in Delivery—Evidence.**

   In an action for damages for the negligent delay in the delivery of a telegram by a telegraph company, a delay in the delivery of four hours from one point in the State to another, about one hundred miles apart, is some evidence of negligence.

3. **Telegraphs—Delay in Delivery—Mental Anguish—Means of Conveyance — Physical Condition — Negligence — Evidence—Damages.**

   When there is evidence of negligence on the part of defendant telegraph company in the delay of a telegram announcing the death of a sister, it is competent for the plaintiff to introduce evidence tending to show that his physical condition was such at the time to prevent his availing himself of the only means he had of reaching his destination in time for the funeral, by going part of the distance by train and a part by private conveyance, and that by reason of the delay in delivering the telegram he was prevented from taking an all-rail journey, for which he did not have the money, but could have borrowed it, and that he suffered mental anguish in consequence.

APPEAL by plaintiff from *Whedbee, J.,* at July (Special) Term, 1912, of DURHAM.

This is an action to recover damages for mental anguish, alleged to have been caused by the negligent failure of the defendant to deliver a telegram. At the conclusion of the evidence for the plaintiff, his Honor entered judgment of nonsuit, upon motion of defendant, and the plaintiff excepted and appealed.

*Bryant & Brogden for plaintiff.*
*Fuller & Reade for defendant.*

ALLEN, J. Applying the rule that, upon a motion to nonsuit, the evidence must be viewed in the light most favorable to the plaintiff (*Mizzell v. Manufacturing Co.,* 158 N. C., 267), and that we cannot act upon the portions of the testimony of a witness which sustain the contention of the defendant, although they may impair the force of other statements made by him (*Dail v. Taylor,* 151 N. C., 289; *Hamilton v. Lumber Co.,* 156 N. C., 523), we are of opinion that it was error to enter judgment of nonsuit upon the plaintiff's evidence.

It was admitted that a telegram, addressed to the plaintiff at West Durham, was delivered to the defendant at Ashboro at 7:50 o'clock of the morning of 16 September, 1911, informing him of the death of his sister at Denton in Davidson County, and requesting him to come at once, and that the defendant undertook to transmit and deliver the same.

The plaintiff offered evidence tending to prove that he was well known in West Durham; that he lived within one-fourth mile of the depot; that he was about his home during the morning, and that the telegram was not delivered to him until about 12 o'clock.

In the absence of any explanation, a delay of four hours in delivering a telegram from one point to another in the State, about one hundred miles apart, is some evidence of negligence. *Meadows v. Telegraph Co.,* 132 N. C., 41.

The plaintiff also offered evidence tending to prove that if the telegram had been delivered promptly, he could and would have left Durham at 10 o'clock on the morning of 16 September, and would have arrived at Denton about 4:30 o'clock P. M. of the same day, before the funeral of his sister; that after the telegram was delivered, he could not reach Denton by rail in time

to attend the funeral; that his physical condition was such that he could not safely go from Durham to Thomasville on a later train and drive about seventeen miles to Denton, and that he suffered mental anguish.

He testified, among other things:

Q. Had you been to see your sister at any time recently before this message? A. Somewhere about five or six weeks.

Q. Was she sick at that time? A. Yes, sir.

Q. Where was she at the time you went to see her? A. At Mr. Putnam's.

Q. Where was that? A. At Denton, N. C.

Q. What train did you go on when you went to see your sister? A. On the evening train. I left West Durham somewhere about 10 o'clock in the morning.

Q. What time did you get to Denton? A. About 4:30 in the evening.

Q. How did you go? A. I went from here to Thomasville and changed trains there and went out on the Piedmont road.

Q. From here to Thomasville, what road do you travel on? A. On the Southern.

Q. What road from Thomasville to Denton? A. Piedmont road.

Q. Was there any other railroad there? A. No, sir.

Q. Did that road run on Sunday? A. No, sir.

Q. Was there any train that you could have reached Denton on before Monday after the morning train passed West Durham on Saturday morning? A. No, sir; not until 4:30 Monday evening.

Q. State whether or not, if you had gotten the telegram on Saturday morning before the west-bound train arrived, state whether or not you would have gone? A. Yes, sir; I would have gone as quick as I could get there.

Q. Could you have gone? A. Yes, sir; by rail.

Q. Did you have sufficient money to pay your way by rail? A. No, sir; but I could borrow it, I suppose, from others.

Q. Did you have some money? A. Yes, sir.

Q. Mr. Fuller asked you about the team. You said you never made a trip over that road? A. No, sir.

Q. What else did you say about the money. to hire a team? A. I didn't have it, though I could borrow it. I had just about enough to make railroad fare.

Q. What was your condition at that time as to sleep and health? Were you able to have made the trip at night if you had been there and had money to hire a team and could have gotten one? A. Not safely. I didn't want to undertake it.

Q. You don't know whether you could have succeeded or not? A. No, sir.

Q. State whether or not your failure to get to the funeral of your sister has caused you any mental suffering or anguish? A. Yes, sir; it certainly has.

There is also evidence on the part of the plaintiff which detracts materially from the evidence we have quoted, but we are not at liberty to rest our opinion upon contradictions in the evidence, as the law commits to the jury the duty of determining the weight that shall be given to the evidence.

Reversed.