(165 App. Div. 763)

## GERBINO v. GREENHUT-SIEGEL-COOPER CO.

(Supreme Court, Appellate Division, First Department. January 22, 1915.)

1. WEAPONS ⬤⟿18—ACCIDENTAL DISCHARGE OF AIR RIFLE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where, in an action for injuries to a 14 year old boy from the accidental discharge of an air rifle, which his companion picked up from a counter in defendant's department store and was attempting to manipulate, there was nothing to indicate that plaintiff knew or had reason to believe that his companion intended to pull the trigger while the rifle, though not aimed, was pointed at him, the question whether plaintiff was contributorily negligent was for the jury.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. §§ 34, 35; Dec. Dig. ⬤⟿18.]

2. WEAPONS ⬤⟿18—INJURY—PROXIMATE CAUSE—LIABILITY.

In such case, the intervening act of plaintiff's companion in pulling the trigger while examining the rifle could not relieve the defendant company from its liability; its negligence in exposing the loaded rifle on its counter being the proximate cause of the injury.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. §§ 34, 35; Dec. Dig. ⬤⟿18.]

3. WEAPONS ⬤⟿18—ACCIDENTAL DISCHARGE OF AIR RIFLE—SUFFICIENCY OF EVIDENCE.

In an action for injury to the eye of a 14 year old boy from the accidental discharge of an air rifle, which his companion picked up from a counter in defendant's store and attempted to manipulate, evidence that the rifle had been unloaded before the boys came to the store, and that defendant thereafter permitted it to be exposed on the counter, and failed to keep a salesman in direct supervision to see that the rifles were not loaded, authorized a finding that defendant was negligent.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. §§ 34, 35; Dec. Dig. ⬤⟿18.]

4. WEAPONS ⬤⟿18—ACCIDENTAL DISCHARGE OF AIR RIFLE—LIABILITY OF MERCHANT—DUTY TO ANTICIPATE ACTS.

Where a company conducting a department store exposes air rifles on a counter, and boys load same to test them, and another boy is subse-

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quently injured in consequence thereof, it is chargeable with negligence and liable for the injury; the loading of the rifles being a matter which it was its duty to anticipate and guard against.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. §§ 34, 35; Dec. Dig. ☞18.]

Appeal from Trial Term, New York County.

Action by Charles Gerbino, an infant over the age of 14 years, by Louis Gerbino, his guardian ad litem, against the Greenhut-Siegel-Cooper Company. From judgment for plaintiff, and denial of new trial, defendant appeals. Affirmed.

See, also, 151 N. Y. Supp. 1117.

Argued before INGRAHAM, P. J., and LAUGHLIN, McLAUGH-LIN, SCOTT, and HOTCHKISS, JJ.

Theodore H. Lord, of New York City, for appellant.
Louis Boehm, of New York City, for respondent.

LAUGHLIN, J.   The defendant conducts a department store in the borough of Manhattan, New York; and on the 7th day of December, 1912, it gave an entertainment called the "Princess Party" there, which appears to have been attended by children, and was attended by the plaintiff, who was then 14 years of age, and he was accompanied by William Bette, aged 13, and Tony Trifletti, aged 12. The defendant deals, among other things, in sporting goods, including air rifles. Tony was desirous of purchasing an air rifle, and after attending the play the boys went to the second floor and there asked a floorwalker where they could find air rifles, and he directed them to the sporting goods department on the same floor, and they went there. In the sporting goods department there was a table about 3 feet high, upon which there was a rack containing air rifles, and some air rifles were lying on the table. There was no employé of the defendant at this table at the time; but there were two salesmen at the revolver counter, only a few feet away, and one of them was waiting on a customer, and the other was polishing revolvers. They and another salesman had charge of this table and the air guns, as well as of the revolver counter.

According to the testimony of one of the boys, the salesman at the revolver counter who was waiting on the customer saw them at the rifle table; and according to the testimony of another, the salesman who was polishing revolvers was looking at them as they came up to examine the air rifles. The three salesmen who had general charge of the rifle table were called by the defendant, and testified that they were at or near the revolver counter at the time, but did not see the boys until the accident happened. A store detective in the employ of the defendant, who was from 60 to 65 feet distant, testified that he saw the boys handling the rifles for three or four minutes before the accident, and that he did not interfere with them, although it was his duty to stop them. The air rifles on the table and on the rack were exposed, and could be reached and examined by customers from either side or end of the table. The defendant gave evidence tending to

show that there were several signs on the table, "Please Do Not Handle"; but the boys testified that they did not see such signs.

The boys stepped up to one end of the table and examined some of the air rifles, and then the plaintiff and William walked about 8 or 10 feet to the other end, nearer the revolver counter. Tony, who remained at the end of the table to which they first came, examined and tried one of the rifles by pointing it at the floor and pulling the trigger, and nothing came out of the barrel. He then picked up a 1,000-shot air rifle, which had a lever underneath the stock by which it was cocked, and placed it across his chest and exerted the necessary pull on the lever, which was shown to be 25 pounds, to cock it, and after cocking it, and while it was still in this position across his chest, with the barrel pointing toward the plaintiff, but without sighting, and without the rifle being pointed as if to sight it, and while looking down at and examining the rifle to see how it worked, he pulled the trigger and a buckshot came out of the barrel and entered plaintiff's eye, which necessitated the removal thereof. The plaintiff saw Tony examining the rifle, but did not observe that he was about to pull the trigger, and had no notice or knowledge thereof in advance.

The evidence does not show by whom or when the buckshot was inserted in the rifle, or whether it was inserted in the barrel or in the magazine; but it tends to show that the rifle could not have been loaded from the muzzle of the barrel, and renders it highly probable that the shot must have been inserted in the magazine, which was a barrel under and nearly as long as the main barrel, into which the load was inserted through an opening at or near the outer end which was closed by a sliding sleeve. The evidence shows that when the magazine is loaded, or contains any shot, a shot will not feed from it into the barrel from which it is fired, unless, while cocking the rifle, the muzzle of the barrel is pointed upward.

There were two kinds of 1,000-shot air rifles on the table and rack—one known as the Columbian and the other as the King—and the evidence tends to show, and it was assumed on the argument of the appeal, and evidently on the trial, that the rifle with which the plaintiff was injured was a Columbian. It was shown by the manufacturer of the Columbian that the rifles are tested by loading and firing them, and then inspected to see that they are not loaded before they are shipped from the factory. It was conceded that the employés of the factory at which the other rifles were made would have testified to the same effect. The defendant sold shot for use with the rifles.

According to the testimony of the employé of the defendant who had charge of the air rifles, they were not kept loaded, and were inspected every morning before they were exposed for sale, for the purpose of seeing that they were not loaded; but they all admitted that they did not know that shot would not feed from the magazine into the barrel if the rifle were cocked while pointed downward, and one of them testified that his inspection was sometimes made by cocking the rifles with the barrel pointed downward. That inspection consisted merely of cocking the rifle and pulling the trigger. It is fairly to be inferred that any one examining the rifles could readily insert shot in the mag-

azine, and that this was apprehended is shown by the attempted daily examination of the rifles by the defendant.

[1] The court left the questions of fact with respect to contributory negligence on the part of the plaintiff and negligence on the part of the defendant to the jury, under a charge by which they were permitted to predicate negligence against the defendant on the theory that it failed to perform the duty which it owed to customers to whom it held out an implied invitation to visit its store and to examine the rifles, with a view to purchasing the same, and charged the jury, in effect, that defendant could not be held liable if the rifle was loaded when defendant received it from the factory, if they found that the manufacturers were of good standing, and had the reputation of conducting their business according to recognized methods, "and were in the habit of making inspection" before shipping the rifles. It cannot be said as matter of law that the plaintiff was guilty of contributory negligence, and the evidence warrants the finding that he was not. There is nothing to indicate that he knew or had reason to believe that Tony intended to pull the trigger while the rifle, although not aimed, was pointed at him.

[2] The defendant, if negligent in the duty which it owed the plaintiff, is not relieved from liability by the intervening act of Tony in pulling the trigger while examining the rifle, for its negligence would, in the circumstances, be a proximate cause. Travell v. Bannerman, 71 App. Div. 439, 75 N. Y. Supp. 866, and cases cited, reversed on another point 174 N. Y. 47, 66 N. E. 583.

[3] The jury were justified in finding that the defendant was guilty of negligence in thus exposing the loaded rifle, for in handling and exposing firearms for sale it was required to exercise a high degree of care to see that they were not loaded when placed upon its show table and exposed for sale, or thereafter, either by its own employés or by those visiting the store, and it appears by the evidence that this rifle had been loaded prior to the time the boys came there, and that the defendant failed to keep and maintain a salesman in direct charge and supervision to see that the rifles were not loaded. Travell v. Bannerman, supra, and cases cited in Mr. Justice Woodward's opinion at Appellate Division; Higgins v. Ruppert, 124 App. Div. 530, 108 N. Y. Supp. 919.

[4] The jury were justified in finding that the defendant should have anticipated that boys or others, in examining and inspecting these air rifles, might insert shot to see how they worked, or for the purpose of testing them, for they are firearms designed principally for the use of boys, and the natural interest and curiosity of boys might lead to their attempting to load the rifles and to try them.

The defendant gave evidence tending to show that for the holiday trade it is customary to display such firearms in the manner in which it displayed them, and that at other seasons the rifles are kept on the racks, and not within the reach, or, at least, not within the convenient reach, of customers. That evidence, however, does not show any custom to leave the rifles thus exposed to be handled by customers, unattended, as was done in the case at bar, even if that would have aided defendant.

The defendant took many exceptions to the charge and to the refusal of the court to charge. We have examined all of them and find no error, and they present no question requiring discussion in an opinion. It follows that the judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs.

INGRAHAM, P. J., and McLAUGHLIN, SCOTT, and HOTCH-KISS, JJ., concur.