JAMES P. TOMBERLIN v. O. O. BACHTEL.

(Filed 24 February, 1937.)

1. **Contracts § 7d—Evidence on issue of illegality of slot machines held conflicting and directed verdict that contract relating thereto was void held error.**

   Plaintiff instituted this action to recover for breach of contract by defendant under which plaintiff was entitled to have a certain percentage of the receipts collected by him from defendant's slot machines applied to the purchase of an interest in the business by plaintiff, plaintiff alleging that defendant disposed of the machines without accounting to plaintiff for the percentage of the receipts turned in by plaintiff on the purchase of the interest in the business. Plaintiff alone testified as to the method of operation of the machines, and stated that the machines were called marble game tables and explained the method of operation and testified that the machines did not pay off in money, but only in checks to be put back in the machine, and that if the ball went in certain holes in the table the player would be entitled to free shots. *Held:* The testimony is

susceptible of the inference that the machines were unlawful in the light of chs. 37 and 282, Public Laws of 1935, as interpreted by the Court, and a peremptory instruction that if the jury believed the witness to find that the contract sued on was not void as a contract relating to illegal slot machines, *is held* for error.

**2. Trial § 19—**

Where portions of the testimony of a material witness are inconsistent or contradictory, and permit more than one inference to be drawn therefrom, it is a matter for the jury to decide which view of the evidence should be accepted.

**3. Appeal and Error § 46—**

'Where a new trial is awarded on one exception, other exceptions relating to matters which may not arise on a subsequent hearing need not be determined.

APPEAL by defendant from *Phillips, J.,* at December Term, 1936, of BUNCOMBE. Modified and affirmed.

This was an action to recover damages for breach of contract relative to the ownership and operation of certain slot machines or amusement devices, instituted in the general county court of Buncombe County.

From judgment on the verdict in the general county court the defendant appealed to the Superior Court, assigning errors.

In the Superior Court all of defendant's assignments of error were sustained and the cause was remanded to the general county court for judgment dismissing the action.

From the judgment of the Superior Court the plaintiff appealed to the Supreme Court.

*DuBose & Orr for plaintiff, appellant.*
*Jones & Ward for defendant, appellee.*

DEVIN, J. The determinative question involved in this appeal is presented by defendant's contention that the machines, about the operation and ownership of which the parties contracted, were gambling devices, and illegal, and that an action to recover profits therefrom could not be maintained.

The issue on this phase of the case, submitted to the jury in the general county court, was as follows: "Was the contract sued on illegal in that it constituted a gambling transaction, as condemned by law?" Upon this issue the judge of the county court charged as follows: "If you believe the testimony of the witness and find the facts to be as all the evidence tends to show, you would answer the issue 'No.'"

Exception to this charge was sustained by the judge of the Superior Court.

The only witness as to the character and method of operation of the slot machines was the plaintiff.   The pertinent portions of this testimony on this point were as follows: That he worked with defendant first as employee and then as partner, receiving a percentage of the gross collections from the machines in Asheville and Western North Carolina; that he looked after the machines, checked them up and kept them running; that defendant owned the machines and had charge of buying and selling them; that by the terms of the contract plaintiff retained ten per cent of his collections from the machines, and fifteen per cent thereof was put back in the business until defendant received sufficient amount to entitle plaintiff to one-half interest in the machines and the business; that this contract for a share in the business was made 5 October, 1935, and continued until August, 1936, when defendant breached the contract, disposed of the machines, and failed to account to plaintiff; that the gross collections taken in by plaintiff during the period was about fourteen thousand dollars, which was turned over to defendant, less ten per cent, fifteen per cent of the collections being the amount contributed to the purchase of an interest in the business.   The plaintiff further testified:

"Those are machines where you pull a spring and a ball shoots around and falls in a hole; it is called a marble game table; by placing a nickel in the slot you were entitled to shoot a different number of balls; they would shoot these one at a time by pulling a plunger; the plunger was attached to a spring, you pulled the plunger and the ball rolled around and rolled down and fell in one hole or another.   They didn't pay off any money, it was a skill game, but no machine ever paid any money. You got free shoots if it fell in certain holes.   It was skill.   That is the right principle.   Couldn't say which hole it would fall in.   If it fell in certain holes it paid off checks, pay-off checks to be put back in the machines.

"He told me a decision of the Supreme Court was handed down—he didn't say he wasn't going to operate until he told me that day he quit. He didn't come to me and tell me it was a violation of law—he said when the Supreme Court ruled; I quit along with him.   When the Supreme Court ruled that decision the police department quit it.   Mr. Bachtel didn't tell me about the Supreme Court (interrupted).   I brought the machines in under Mr. Bachtel's orders; that is when the Supreme Court decision came down; me, Mr. Bachtel, and nobody else wasn't going to run any machines after that.   I wouldn't run the machines after the decision came down.   I am not blaming Mr. Bachtel for quitting when I wouldn't run the machines myself after the Supreme Court decision.   Under the law I am not denying that Mr. Bachtel had to quit.   I don't know that he had to quit.   They are running machines

TOMBERLIN *v.* BACHTEL.

here in Asheville now that are lawful. We quit running the machines when the Supreme Court decision came down but they are running them lawfully. I quit. I didn't say we were going to quit running and not run them any longer. We stopped on account of the police department and the Supreme Court decision. There wasn't anything said about running the machines longer, and the reason we stopped running these machines was on account of the decision of the law about it."

By chapters 37 and 282, Public Laws of 1935, it was made unlawful to own, possess, permit the operation of, or to make, any agreement with reference to slot machines as therein defined. And an unlawful slot machine was defined as one adapted to use in such a way that, by the insertion of a coin, the device could be operated so that, by reason of chance, the outcome of the operation was unpredictable, and the user or operator might receive or become entitled to receive money, thing of value, or any check, token, or memorandum which could be exchanged for thing of value, or the user might secure additional chances or rights to use such machine. *S. v. Humphries,* 210 N. C., 406.

In the light of these statutes as interpreted by this Court it is apparent that the testimony of the plaintiff is susceptible of the inference that the machines, about the operation of which he contracted, were unlawful and his contract unenforceable. *King v. Winants,* 71 N. C., 469; *Pfeifer v. Israel,* 161 N. C., 409; *Basnight v. Manufacturing Co.,* 174 N. C., 206; *Marshall v. Dicks,* 175 N. C., 38.

Therefore, the exception to the peremptory instruction to the jury by the judge of the county court was properly sustained. On the other hand, we hold that the testimony presents some evidence that the machines were not unlawful.

Where portions of the testimony of a material witness are inconsistent or contradictory, and permit more than one inference to be drawn therefrom, it becomes a matter for the jury to decide which view of the evidence should be accepted. *Dail v. Taylor,* 151 N. C., 284; *Hamilton v. Lumber Co.,* 156 N. C., 519; *Poe v. Telegraph Co.,* 160 N. C., 315; *Hadley v. Tinnin,* 170 N. C., 84; *Smith v. Coach Co.,* 191 N. C., 589.

As there must be another trial upon the whole case, we deem it unnecessary to consider or to decide the other assignments of error, as they may not arise on another trial.

The plaintiff's assignment of error for failure to dismiss the appeal from the general county court cannot be sustained. The findings of the judge of the Superior Court on this point sustain his ruling.

The judgment of the Superior Court should remand the case to the general county court for a new trial in accord with this opinion.

Modified and affirmed.