JOHANNA FOX v. THE ASHEVILLE ARMY STORE, INC.

(Filed 8 March, 1939.)

1. **Trial § 24—More than scintilla of evidence takes the case to the jury.**

    Where there is more than a scintilla of evidence to sustain the allegations of the complaint, the case must be submitted to the jury, its sufficiency to warrant a verdict for plaintiff being for the determination of the jury, subject only to the discretionary power of the trial court to set the verdict aside in proper cases, and a strict adherence to this rule is necessary to preserve the right of trial by jury guaranteed by the Constitution, Art. I, sec. 19.

2. **Trial §§ 22b, 23—On motion to nonsuit, evidence which makes for plaintiff's claim must be considered in light most favorable to plaintiff.**

    Upon a motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, and contradictions and discrepancies in plaintiff's testimony, or the testimony of her witnesses, will not justify the withdrawal of the case from the jury, since plaintiff is not bound by every word of the testimony of her witnesses, and since only the evidence favorable to plaintiff should be considered, it being for the jury to determine what part of the evidence they will believe. C. S., 567.

**3. Trial § 24—**

> The natural and physical evidence, in its relation to the oral testimony, is properly to be considered in determining the sufficiency of the evidence to overrule defendant's motion to nonsuit.

**4. Negligence §§ 3, 19a—Whether injury from air rifle shot was the result of negligence of defendant's salesman held for jury.**

> Plaintiff brought this action to recover for injuries to her eye alleged to have been sustained when a shot from an air rifle fired by defendant's salesman hit and broke the left lens of her eyeglasses. The physical evidence tended to show that plaintiff was standing at the back of defendant's store, that she was wearing a hat with a brim four or five inches wide, was looking directly at the salesman, and that the shot bored a round hole in the center of the lens, indicating that the shot was traveling in a line perpendicular to the plane of the lens. Plaintiff introduced the deposition of the salesman, taken under C. S., 900-901, to the effect that the salesman examined the gun and thought that he had removed all the shot, that he then pulled the trigger twice to test the air compression machinery, pointing the gun at the ceiling toward the front of the store, and that the second time the gun expelled the shot which must have struck the ceiling and ricocheted to strike plaintiff. *Held:* The physical evidence contradicts the evidence of the salesman in critical points, and the sufficiency of the salesman's examination of the gun, whether he pointed it at the ceiling toward the front of the store, and whether the shot ricocheted, are questions for the jury to determine from all the evidence, and the evidence should have been submitted to the jury on the question of negligence in handling the dangerous instrumentality, and the question of proximate cause, the occurrence not being so unforeseeable as to put it, as a matter of law, beyond the range of proximate causation.

WINBORNE, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting.

DEVIN, J., concurs in dissent.

APPEAL by plaintiff from *Johnston, J.,* at October Term, 1938, of BUNCOMBE. Reversed.

This is an action for damages for an injury sustained by the plaintiff through the alleged negligence of the defendant.

The evidence is substantially as follows:

The plaintiff had entered defendant's store in the city of Asheville to make a purchase, and had gone toward the rear. A salesman of the defendant discharged a shot out of a Daisy air rifle, which struck the left lens of her eyeglasses, making a hole in the same and driving splinters of glass into her eye. Plaintiff had already lost the sight of her right eye in a former accident.

The clerk, or salesman, had been examined on oath by the plaintiff, under C. S., 900-901, and his deposition was used in the trial. He testified that a customer had brought back into the store a Daisy air rifle, complaining of some defect in it.

This air rifle used a "BB" shot, which was projected by means of compressed air. The barrel part of the rifle consisted of two concentric cylinders; the smaller inside cylinder, or tube, was used for the discharge of the shot and the space between it and the surrounding outside cylinder was used as a magazine for shot, and held about 500 shot. The shot were introduced through an opening near the muzzle.

Witness stated that he unscrewed the cap on the end of the muzzle, took out the inner cylinder, and, on examining it, found no shot in it. He turned the gun down and shot contained in the magazine rolled out. Conceiving then that it was empty, he reassembled the gun, gave the piston the proper compression, and discharged it twice, the end of the gun, as he says, being "pointed to the ceiling, a little to the front of the store." (The witness states he was facing the front of the store.) He was trying to see whether the rifle would work.

At the time of her injury plaintiff was wearing a hat with a brim, four or five inches wide, low on her forehead. She further testified that the shot struck about half way between the top and bottom of the lens. "There was a perfectly round hole in the lenses and the lens were shivered into like as if dozens of pieces, but yet it was holding together. But this hole was here."

There was further evidence as to the injury done plaintiff's eye, and the impairment of its vision.

The trial judge sustained the defendant's motion for judgment as of nonsuit and plaintiff appealed.

*George M. Pritchard, C. E. Blackstock, and M. A. James for plaintiff, appellant.*

*Smathers & Meekins for defendant, appellee.*

SEAWELL, J. This case brings up a consideration of the conditions upon which the trial court may take a case away from the jury for want of sustaining evidence.

According to the uniform holding of this Court, a case cannot be taken away from the jury when there is more than a scintilla of evidence to sustain the allegations of the complaint. *Gates v. Max,* 125 N. C., 139, 34 S. E., 266; *Cable v. R. R.,* 122 N. C., 892, 29 S. E., 377; *Cox v. R. R.,* 123 N. C., 604, 31 S. E., 848. "That act" (C. S., 567) "was not intended to deprive parties of the right to trial by jury where there is any evidence . . ." *Willis v. R. R.,* 122 N. C., 905, 908, 29 S. E., 941. If there is such evidence, the quantum which it takes to produce mental conviction resulting in a verdict is a matter for the jury, and the evidence must be left to it, subject only to the discretion of the trial judge to set aside the verdict in proper cases.

Only by a strict adherence to this principle can the Court hope to preserve the right of trial by jury guaranteed by the Constitution, Art. I, sec. 19.

In applying this principle in cases involving negligence, as well as in others, the Court has repeatedly held that on a motion for nonsuit the evidence must be taken in the light most favorable to the plaintiff. *Gladstone v. Swaim,* 187 N. C., 712, 122 S. E., 755; *Allen v. Garibaldi,* 187 N. C., 798, 123 S. E., 66; *Godfrey v. Power Co.,* 190 N. C., 24, 128 S. E., 485; *Cabe v. Parker-Graham-Sexton, Inc.,* 202 N. C., 176, 162 S. E., 223; *Gunn v. Taxi Co.,* 212 N. C., 540, 193 S. E., 747; *Leonard v. Ins. Co.,* 212 N. C., 151, 157, 193 S. E., 166; *Pearson v. Luther,* 212 N. C., 412, 193 S. E., 139; *Gower v. Davidian,* 212 N. C., 172, 193 S. E., 28; *Hedgecock v. Ins. Co.,* 212 N. C., 638, 194 S. E., 86; *Anderson v. Amusement Co.,* 213 N. C., 130, 196 S. E., 386; and he is entitled to every reasonable intendment thereon, and every reasonable inference therefrom. *Hancock v. Wilson,* 211 N. C., 129, 189 S. E., 631; *Cole v. R. R.,* 211 N. C., 591, 191 S. E., 353; C. S., 567. See annotations N. C. Code, Michie, 1935, sec. 567. The rule is sometimes stated conversely, with perhaps more pointed significance. Upon demurrer, the evidence must be taken most strongly against the defendant. *Gates v. Max, supra; Purnell v. R. R.,* 122 N. C., 832, 29 S. E., 953.

The rule that the evidence must be considered in the light most favorable to the plaintiff goes even further and applies to the testimony of the plaintiff herself, although there may be discrepancies and contradictions in it. *Matthews v. Cheatham,* 210 N. C., 592, 188 S. E., 87; *Mulford v. Hotel Co.,* 213 N. C., 603, 197 S. E., 169; *Gunn v. Taxi Co., supra; Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 146; *Lumber Co. v. Perry,* 212 N. C., 713, 194 S. E., 475. *A fortiori,* the rule must apply to the testimony of a witness for plaintiff; *Tomberlin v. Bachtel,* 211 N. C., 265, 189 S. E., 769; no matter whether to a witness indifferent to the result or to one, as here, who is himself charged with the negligence.

The plaintiff is not bound by every word uttered by her witness. That would be an absurd and impractical rule, which would probably take the vast majority of cases from the jury and make the judicial investigation of truth an impossibility.

We cannot find where the Court has knowingly deviated from these principles. It must be clear, then, without violating them, that the Court cannot come to a conclusion based upon an impressionistic view of the evidence, *en masse,* which takes into consideration, consciously or unconsciously, its inconsistencies and contradictions. It cannot institute a comparison between the favorable and unfavorable and cancel out favorable factors to reach what it might consider a better result. It

cannot select, out of confused and inconsistent and contradictory evidence, the testimony of any one witness, or any part of his testimony, as conclusive on the plaintiff upon the theory that she vouches for his truthfulness, or the correctness of his statement, when there is any evidence from which negligence can be inferred. The reason is simple and is plainly stated in the decisions: The jury alone have the right to say what part of the evidence they will believe. *Gunn v. Taxi Co., supra; Shell v. Roseman,* 155 N. C., 90, 71 S. E., 86; *Ward v. Mfg. Co.,* 123 N. C., 248, 252, 31 S. E., 495; *Smith v. Coach Line,* 191 N. C., 589, 132 S. E., 567. In *Newby v. Realty Co.,* 182 N. C., 34, 41, 108 S. E., 323, the Court lays down the rule from which, as far as we are aware, it has never consciously departed: "Plaintiff also is entitled to the most favorable inferences deducible therefrom, considering only so much of the evidence as is favorable to the plaintiff and rejecting that which is unfavorable."

Procedural rules applying to the development of a case on trial such as "the plaintiff will not be permitted to contradict her own witness," and the like, have already served their purpose and have come to an end with the trial. Here the evidence must be considered objectively, without any obligation of the parties thereto as proponents and sponsors, save that which requires the court to look at the evidence in the most favorable light to the plaintiff, with a view of finding whether there is any evidence tending to establish her cause.

In applying this test to the evidence it is also proper to examine the natural and physical evidence in its relation to the oral testimony. In the language of *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88: "There are a few physical facts which speak louder than some of the witnesses." The physical evidence is sometimes more persuasive than words, since it is free from human prejudice and unaffected by the "personal equation." *Goss v. Williams,* 196 N. C., 213, 145 S. E., 169; *Burnett v. Williams,* 196 N. C., 620, 146 S. E., 533. We shall discuss this evidence as sparingly as possible, but some reference to it has been rendered unavoidable.

The witness, Roy Dindinger, a salesman in the Army Store, was handling and testing an air rifle that had been brought back by a dissatisfied customer. The rifle, or one of similar make, was exhibited to this court without objection and examined. The court is at liberty to form its own conclusions from the evidence before it as to the character of the rifle as a dangerous instrumentality, as a matter of law, and would find no difficulty in following other courts in pronouncing it a dangerous instrumentality to be handled with commensurate care; *Pudlo v. Dubiel,* 175 N. E., 536 (Mass.); *Gerbino v. Greenhut, Etc., Co.,* 152 N. Y. Supp., 502; and that, nothing else appearing, the discharge of a shot

therefrom in an open store, containing invited customers, is evidence of negligence demanding explanation to relieve the act from such implication. It is not, however, necessary to decide that question as a matter of law here. There is ample evidence from which the jury might determine the character of a rifle capable of projecting, by means of compressed air, leaden shot of the size indicated, with the apparent result.

The witness Dindinger testified as to his examination of the rifle before discharging it, and stated that upon such examination he found no shot in it; but there was a shot left in it, as proved by a subsequent discharge, which raises a very practical question as to the sufficiency of his investigation. This Court has no right to single out the testimony of Dindinger relating to this examination, on the theory that the plaintiff vouches for Dindinger's truthfulness by introducing him, and to pronounce that examination, as a matter of law, sufficient. It is for the jury to say whether the examination was as perfunctory as it was futile —at any rate, to pass upon its sufficiency.

In that particular, as well as others relating to the critical points of the evidence, the plaintiff is entitled to the inferences to be drawn from the physical facts which plainly contradict the testimony of Dindinger. The fact that he is so contradicted does not necessarily mean that he intentionally misstated the facts. If the jury accepted the evidence of the physical facts and drew therefrom the inferences which it was their privilege to draw, they might have come to the conclusion that he was mistaken.

Further analyzing this part of the evidence, Dindinger says he pointed the rifle toward the front of the store; but there is evidence that the shot hit the plaintiff's eye while she was at a distance from the witness *in the rear of the store.* The jury might have found such a ballistic performance incredible.

Defendant argues that the shot ricocheted from the ceiling, but the evidence is that the plaintiff was wearing a hat with a brim four or five inches wide, low on the forehead, and was looking directly toward the man handling the gun. There is evidence that the shot bored a round hole in the center of the lens, from which the jury may well have inferred that the impact was in a line normal to the plane of the lens.

We have tried to appraise the facts in a cold light without reflection on the motives of any party or witness in the case. The Court is neither prosecutor, nor defender, nor jury. Speculations as to why the plaintiff did not call certain witnesses to corroborate her testimony, appropriate perhaps before the jury, where the credibility of the witness is an issue, are usually regarded as advocative in character, and are without significance here.

Even if we accept the theory that the shot ricocheted after impact on the ceiling, which the physical evidence tends to contradict, we cannot accept the conclusion that the sequel was so unforseeable as to put the occurrence, as a matter of law, beyond the range of proximate causation, as not being the natural and probable result of the negligent conduct of Dindinger, if such negligence should be found; and on that question we cannot say that this evidence, considered in the light most favorable to the plaintiff, discloses nothing for the jury to consider.

The judgment of nonsuit is

Reversed.

WINBORNE, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting: If I correctly interpret the majority opinion and the inferences which necessarily must be drawn therefrom, it undertakes to modify materially the rule which has heretofore prevailed in this Court in determining the correctness of a judgment of nonsuit. It is true that plaintiff is not bound by every word uttered by her witnesses and that where conflicts and inconsistencies appear they must be resolved in favor of the plaintiff. But this does not mean that we are not required to view as a whole the picture painted by plaintiff's testimony. We only disregard the defects therein which mitigate against the plaintiff's case. We are not permitted to blot out and wholly disregard a complete section of the picture so as to arrive at the conclusion that the plaintiff has established a cause of action. To do so would make it practically impossible to sustain any judgment of nonsuit. For instance, in cases where the plaintiff's testimony discloses that her cause of action is barred by her own contributory negligence we would be required to overlook completely any of the testimony other than that tending to show that the defendant was negligent and that the plaintiff received injuries. The evidence of contributory negligence being adverse to her cause of action, we would be required to disregard it entirely.

The plaintiff offered the evidence of the witness Dindinger and relies upon his testimony. The plaintiff, having offered the evidence of the witness Dindinger, she thereby vouched for his truthfulness. While she could show by other witnesses that the facts were different from those testified by this witness, in some or all particulars, she could not base her case upon the suggestion that he had testified falsely, when no evidence was offered and when no witness had testified to facts in any way contradictory.

7—215

The plaintiff, through her testimony, including that of Dindinger, gives a complete picture of the occurrence about which she complains. While she was in the store of the defendant a customer returned an air rifle to the clerk at the gun counter, complaining that it was out of order and would not work. The clerk took the precaution to dismantle the gun for the purpose of unloading it. He looked in the cylinder and ascertained that there was no shot therein. He then emptied the shot out of the magazine and reassembled the gun. Then, for the purpose of testing it to see whether the air compression machinery would work, he compressed the air in the rifle and pulled the trigger. No shot came out. He again compressed the air and pulled the trigger. At this time a shot was ejected and in some manner struck the plaintiff, penetrating the lens to her left eyeglass. At the time, he had the rifle pointed upward and in an opposite direction to plaintiff. So far as I can see the explanation of the occurrence and the fact that the plaintiff was struck in the eye presents no inconsistency or contradiction which requires us to disregard any part of Dindinger's testimony. The explanation merely composes a part of the complete picture which we must consider to determine whether there was any negligence on the part of the clerk which proximately caused injury to the plaintiff.

Furthermore, I am unable to see wherein lies the negligence. The clerk exercised every reasonable precaution to determine that the gun was not loaded before testing it. In my opinion, to say that this evidence should be totally disregarded and that we should look only to the testimony tending to show that the rifle was fired and the physical evidence that the plaintiff was struck in the eye, takes this case completely out of the general rule in determining when a nonsuit is proper.

Even if we concede that, notwithstanding the care exercised by the clerk to determine that the rifle was not loaded, the mere fact that he pulled the trigger when the air in the rifle was compressed constituted negligence, it would seem to me that the testimony fails to disclose that the circumstances were such that the clerk could have reasonably foreseen that under the circumstances injury was likely to occur. Having exercised precaution in unloading the rifle he exercised the further precaution to point it upward before pulling the trigger. I do not comprehend that any man of ordinary prudence could, or would, have foreseen that injury was likely to occur therefrom to some customer in the store.

It is somewhat significant that, although the plaintiff testified she was taken to a doctor immediately, she did not tender as a witness the physician who examined and treated her for the alleged injury. She offered a physician who had treated her eyes theretofore, who testified

that she had a deficiency of vision. She likewise offered one who examined her sometime thereafter, who testified he found no evidence of traumatic injury, and that if she suffered an injury as testified to by her it was possible that it had some effect on her vision. Nevertheless, his testimony as to the condition of her left eye, which she alleges was injured, shows that it was in substantially the same condition as it was when it was treated by Dr. McCall.

After careful examination of the evidence, and the reasoning in the majority opinion, I am compelled to differ with the majority. In my opinion the judgment of nonsuit should be sustained.

DEVIN, J., concurs in dissent.